| | | |
|---|---|---|
| MARCIA DEWEY AND COREY DEWEY, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| V. | ) | CASE NO: 1:21-CV-03505 |
| | ) | |
| K SPLIT LOGISTICS, LLC., a Texas limited | ) | |
| liability company; AKINTADE O. KAYODE; | ) | |
| JAUNOT L. NELSON; FAT AND BROKE, INC. | ) | |
| d/b/a GAMER LOGISTICS; FALCON MOVE, | ) | |
| LLC.; AZAM LOGISTICS, LLC.; TRANSPLACE | ) | |
| TEXAS, LP., a Texas limited partnership; UBER | ) | |
| FREIGHT US LLC, a Texas limited liability | ) | |
| company, successor in interest to TRANSPLACE | ) | |
| TEXAS, LP., as Texas limited partnership; and | ) | |
| FLASH TRUCK LINES CORPORATION, | ) | |
| D/B/A NATIONAL BROKERS | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**FOURTH AMENDED COMPLAINT AT LAW**

NOW COME Plaintiffs, MARCIA DEWEY (hereinafter "MARCIA") and

COREY DEWEY (hereinafter "COREY"), and state as follows for their Fourth Amended

Complaint at Law against Defendants K SPLIT LOGISTICS, LLC., a Texas limited

liability company (hereinafter "K SPLIT"); AKINTADE O. KAYODE (hereinafter

"KAYODE"); JAUNOT L. NELSON (hereinafter "NELSON"); FAT AND BROKE,

INC., d/b/a GAMER LOGISTICS (hereinafter "GAMER"); FALCON MOVE, LLC., a

Texas limited liability company  (hereinafter "FALCON"); AZAM LOGISTICS, LLC., a

Texas limited liability company (hereinafter "AZAM"); TRANSPLACE TEXAS, LP, a

Texas limited partnership (hereinafter "TRANSPLACE"); UBER FREIGHT US LLC, a

Texas limited liability company that is the successor in interest to TRANSPLACE TEXAS, LP, a Texas limited partnership (hereinafter "UBER"); and FLASH TRUCK LINES CORPORATION, a Texas corporation, doing business as NATIONAL BROKERS (hereinafter "NATIONAL BROKERS"):

## Parties

1.     MARCIA is an individual who at all relevant times was a citizen of Illinois because she was domiciled in Ogle County, Illinois, within the Northern District of Illinois.

2.     COREY is an individual who at all relevant times was a citizen of Illinois because he was domiciled in Ogle County, Illinois, within the Northern District of Illinois.

3.     MARCIA and COREY were married on May 11, 2013, and have remained married at all times since.

4.     K SPLIT is a limited liability company that is a citizen of Texas.

5.     On information and belief, K SPLIT is not a citizen of Illinois.

6.     At all relevant times, K SPLIT was a motor carrier operating in interstate commerce under DOT authority and DOT number 3476487.

7.     At all relevant times, K SPLIT was doing business in the Northern District of Illinois.

8.     KAYODE is an individual who at all relevant times was a citizen of Texas because he was domiciled in Texas.

9.     On information and belief, at all relevant times, KAYODE owned and operated a trucking business that used commercial motor vehicles to transport property in intrastate and interstate commerce.

10.     At all relevant times, KAYODE was doing business in the Northern District of Illinois.

11.     At all relevant times, KAYODE was the registered owner of the 2013 Freightliner cargo truck (hereinafter "the Freightliner") that was involved in the motor vehicle collision that occurred on June 1, 2021 in Ogle County, Illinois that gives rise to this case (hereinafter "the Crash").

12.     NELSON was at all relevant times a citizen of Texas because he was domiciled in Texas.

13.     NELSON was operating the Freightliner at the time of the Crash.

14.     GAMER is a for-profit corporation that was at all relevant times a citizen of Texas because it was incorporated in Texas and has its principal place of business in Texas.

15.     At all relevant times, GAMER was a motor carrier operating in interstate commerce under DOT authority and DOT number 1267279, but did not have authority to operate as a broker.

16.     At all relevant times, GAMER was doing business in the Northern District of Illinois.

17.     FALCON is a limited liability company that is a citizen of Texas.

18.     On information and belief, FALCON is not a citizen of Illinois.

19.     At all relevant times, FALCON was a motor carrier operating in interstate commerce under DOT authority and DOT number 3359134, but did not have authority to operate as a broker.

20.     At all relevant times, FALCON was doing business in the Northern District of Illinois.

21.     AZAM is a limited liability company that is a citizen of Texas.

22.     On information and belief, AZAM is not a citizen of Illinois.

23.     At all relevant times, AZAM was a motor carrier operating in interstate commerce under DOT authority and DOT number 3202827, but did not have authority to operate as a broker.

24.     At all relevant times, AZAM was doing business in the Northern District of Illinois.

25.     TRANSPLACE is a limited partnership that is a citizen of Texas.

26.     On information and belief, TRANSPLACE is not a citizen of Illinois.

27.     At all relevant times, TRANSPLACE was a freight broker operating in interstate commerce under DOT authority and DOT number 2226417.

28.     At all relevant times, TRANSPLACE was doing business in the Northern District of Illinois.

29.     UBER is a limited liability company that is a citizen of Texas.

30.     On information and belief, UBER is not a citizen of Illinois.

31.     On or about August 1, 2022, TRANSPLACE filed a "Certificate of Conversion of a Limited Partnership Converting to a Limited Liability Company" stating that TRANSPLACE was converting from a limited partnership to a Texas limited liability company named Uber Freight US LLC.

32.     NATIONAL BROKERS is a for-profit corporation that was at all relevant times a citizen of Texas because it was incorporated in Texas and has its principal place of business in Texas.

33.     At all relevant times, NATIONAL BROKERS was a freight broker operating in interstate commerce under DOT authority and DOT number 2532047.

34.     At all relevant times, NATIONAL BROKERS was doing business in the Northern District of Illinois.

## Jurisdiction and Venue

35.     The Court has jurisdiction of the subject matter of this proceeding pursuant to 28 U.S.C. §1332(a)(1) because this proceeding is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

36.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## General Allegations Applicable to All Counts

37.     Prior to June 1, 2021, Cummins Engine and/or Cummins Juarez XPJ (hereinafter "Cummins") hired TRANSPLACE as a freight broker to procure an authorized interstate motor carrier to transport a shipment of Cummins' component engine parts (hereinafter "the Shipment") from Amtech Precision Products in Elgin, Illinois, to El Paso, Texas.

38.     TRANSPLACE hired GAMER as a motor carrier to transport the Shipment.

39.     GAMER accepted the Shipment in its capacity as a motor carrier.

40.     GAMER agreed with TRANSPLACE that GAMER would transport the Shipment in a commercial motor vehicle owned, leased or otherwise controlled by GAMER.

41.     TRANSPLACE authorized GAMER to transport the Shipment.

42.     GAMER was legally authorized by the United States Department of Transportation to provide interstate transportation of property in a commercial motor vehicle.

43.     GAMER did not transport the Shipment in a commercial motor vehicle owned by GAMER.

44.     Instead, GAMER hired NATIONAL BROKERS as a freight broker to procure another authorized interstate motor carrier to transport the Shipment.

45.     NATIONAL BROKERS was a company that was affiliated with GAMER.

46.     NATIONAL BROKERS hired FALCON as a motor carrier to transport the Shipment.

47.     FALCON accepted the Shipment in its capacity as a motor carrier.

48.     FALCON agreed with NATIONAL BROKERS that FALCON would transport the Shipment in a commercial motor vehicle owned, leased or otherwise controlled by FALCON.

49.     NATIONAL BROKERS authorized FALCON to transport the Shipment.

50.     FALCON was legally authorized by the United States Department of Transportation to provide interstate transportation of property in a commercial motor vehicle.

51.     FALCON did not transport the Shipment in a commercial motor vehicle owned by FALCON.

52.     Instead, FALCON used the Freightliner to transport the Shipment.

53.     The Freightliner was owned by KAYODE and/or K SPLIT.

54.     The Freightliner had a gross vehicle weight rating of at least 26,000 pounds.

55.     Pursuant to a May 19, 2021 Lease Agreement, FALCON leased the Freightliner from K SPLIT and/or KAYODE.

56.     Pursuant to a May 19, 2021 Carrier Agreement between FALCON and K SPLIT, K SPLIT, in its capacity as a motor carrier, agreed to transport property for FALCON.

57.     Pursuant to a May 19, 2021 Lease Agreement, AZAM leased the Freightliner from K SPLIT and/or KAYODE.

58.     Pursuant to a May 19, 2021 Carrier Agreement between AZAM and K SPLIT, K SPLIT, in its capacity as a motor carrier, agreed to transport property for AZAM.

59.     On information and belief, AZAM and FALCON are affiliated companies.

60.     AZAM's offices and equipment are located at the same address in McKinney, Texas, as FALCON's.

61.     K SPLIT agreed with FALCON that K SPLIT would transport the Shipment.

62.     K SPLIT accepted the Shipment in its capacity as a motor carrier.

63.     FALCON authorized K SPLIT to transport the Shipment.

64.     K SPLIT was legally authorized by the United States Department of Transportation to provide interstate transportation of property in a commercial motor vehicle.

65.     On or about June 1, 2021, MARCIA was operating her motor vehicle in an easterly direction on Pines Road in Pine Creek Township, Ogle County, Illinois, and was approaching its intersection with Lowell Park Road.

66.     At that same time, NELSON was operating the Freightliner in a southerly direction on Lowell Park Road approaching its intersection with Pines Road.

67.     There was a stop sign directing NELSON to stop at the intersection of Lowell Park Road and Pines Road.

68.     There was no stop sign or other traffic control device directing MARCIA to stop at the intersection of Pines Road and Lowell Park Road.

69.     NELSON failed to stop at the stop sign at the intersection of Lowell Park Road and Pines Road.

70.     NELSON entered the intersection at a time and location at which MARCIA was unable to avoid colliding with the Freightliner.

71.     This resulted in the Crash between MARCIA's vehicle and the Freightliner.

72.     The Crash caused severe injury to MARCIA's lower extremities, spine, head, neck, face and cerebral vascular system.

### Count I
### Negligence
### Marcia vs. Nelson

73.     Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

74.     At all relevant times, NELSON owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation and control of the Freightliner.

75.     NELSON violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

   a.     Failing to keep a proper lookout for other vehicles upon the roadway;

   b.     Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

   c.     Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d.      Failing to stop to avoid a collision;

e.      Failing to sound the horn when approaching the intersection;

f.      Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11-601;

g.      Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.      Otherwise being careless and negligent.

76.     As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against NELSON in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**Count II**
**Negligence – *Respondeat Superior* (Agency)**
**Marcia vs. K Split and Kayode**

77.    Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

78.    K SPLIT employed NELSON as a commercial truck driver.

79.    Additionally or in the alternative, KAYODE employed NELSON as a commercial truck driver.

80.    At all times relevant hereto, NELSON was operating the Freightliner in furtherance of K SPLIT's business as a motor carrier.

81.    Additionally or in the alternative, at all times relevant hereto, NELSON was operating the Freightliner in furtherance of KAYODE's trucking business.

82.    At all relevant times, NELSON was operating the Freightliner for the purpose for which he was employed by K SPLIT.

83.    Additionally or in the alternative, at all relevant times, NELSON was operating the Freightliner for the purpose for which he was employed by KAYODE.

84.    At all relevant times, K SPLIT gave NELSON authority, either express or implied, to use and operate the Freightliner.

85.    Additionally or in the alternative, at all relevant times, KAYODE gave NELSON authority, either express or implied, to use and operate the Freightliner.

86.    At all relevant times, K SPLIT had the right to control the operative details and manner in which NELSON performed his work in operating the Freightliner and transporting the Shipment.

87.     Additionally or in the alternative, at all relevant times, KAYODE had the right to control the operative details and manner in which NELSON performed his work in operating the Freightliner and transporting the Shipment.

88.     At all relevant times, NELSON was acting as an agent, servant and/or employee of K SPLIT while operating the Freightliner.

89.     Additionally or in the alternative, at all relevant times, NELSON was acting as an agent, servant, and/or employee of KAYODE while operating the Freightliner.

90.     Because NELSON was operating the Freightliner within the scope and course of his agency and/or employment with K SPLIT and in furtherance of K SPLIT's business interests at the time of the Crash, K SPLIT is vicariously liable for NELSON's negligence and the damages sustained by Plaintiffs.

91.     Additionally or in the alternative, because NELSON was operating the Freightliner within the scope and course of his agency and/or employment with KAYODE and in furtherance of KAYODE's business interests at the time of the Crash, KAYODE is vicariously liable for NELSON's negligence and the damages sustained by Plaintiffs.

92.     At all relevant times, K SPLIT and KAYODE each owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, ownership and control of the Freightliner.

93.     K SPLIT and KAYODE, acting through their agent, servant and/or employee NELSON, each violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

        a.      Failing to keep a proper lookout for other vehicles upon the roadway;

b.      Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

c.      Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d.      Failing to stop to avoid a collision;

e.      Failing to sound the horn when approaching the intersection;

f.      Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11-601;

g.      Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.      Otherwise being careless and negligent.

94.      As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against KSPLIT and KAYODE, individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count III
### Negligence – Statutory Employment
### Marcia vs. K Split and Kayode

95.     Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

96.     At all relevant times, K SPLIT owned or leased the Freightliner in connection with K SPLIT's business as a motor carrier.

97.     Additionally or in the alternative, at all relevant times, KAYODE owned or leased the Freightliner in connection with KAYODE's trucking business.

98.     At all relevant times, K SPLIT, acting in its capacity as a motor carrier, was using the Freightliner to perform interstate transportation of property pursuant to its agreement with FALCON.

99.     Additionally or in the alternative, at all relevant times, KAYODE was using the Freightliner in connection with KAYODE's interstate trucking business.

100.    K SPLIT employed NELSON as a commercial truck driver.

101.    Additionally or in the alternative, KAYODE employed NELSON as a commercial truck driver.

102.    K SPLIT assigned NELSON to drive the Freightliner and transport the Shipment.

103.    Additionally or in the alternative, KAYODE assigned NELSON to drive the Freightliner and transport the Shipment.

104.    At all times relevant hereto, NELSON was operating the Freightliner in furtherance of K SPLIT's business as a motor carrier.

105.    Additionally or in the alternative, at all times relevant hereto, NELSON was operating the Freightliner in furtherance of KAYODE's trucking business.

106.    At all times relevant hereto, K SPLIT and NELSON were "employer" and "employee," respectively, as those terms are defined in 49 C.F.R. § 390.5.

107.    Additionally or in the alternative, at all times relevant hereto, KAYODE and NELSON were "employer" and "employee," respectively, as those terms are defined in 49 C.F.R. § 390.5.

108.    Because NELSON was K SPLIT's statutory employee at the time of the Crash, K SPLIT is vicariously liable for NELSON's negligence committed while operating the Freightliner and the Plaintiffs' resulting damages.

109.    Additionally or in the alternative, because NELSON was KAYODE's statutory employee at the time of the Crash, KAYODE is vicariously liable for NELSON's negligence committed while operating the Freightliner and the Plaintiffs' resulting damages.

110.    At all relevant times, K SPLIT and KAYODE each owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, ownership and control of the Freightliner.

111.    K SPLIT and KAYODE, acting through their statutory employee NELSON, each violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

    a.    Failing to keep a proper lookout for other vehicles upon the roadway;

b.     Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

c.     Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d.     Failing to stop to avoid a collision;

e.     Failing to sound the horn when approaching the intersection;

f.     Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11-601;

g.     Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.     Otherwise being careless and negligent.

112.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against K SPLIT and KAYODE, individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## Count IV
### Institutional Negligence
### Marcia vs. K Split and Kayode

113.    Plaintiffs hereby incorporate by reference Paragraphs 37-72, 78-91 and 96-109 of this Complaint as if fully set forth herein.

114.    K SPLIT was a motor carrier that employed agents, servants, employees and statutory employees (including NELSON) to perform the acts necessary to operate its commercial motor vehicle operation, including operating commercial motor vehicles (including the Freightliner) on the public highways.

115.    KAYODE employed agents, servants, employees and statutory employees (including NELSON) to perform the acts necessary to operate his trucking business, including operating commercial motor vehicles (including the Freightliner) on the public highways.

116.    At all relevant times, K SPLIT and KAYODE owed the public, including Plaintiffs, a duty to exercise reasonable care to train and supervise the drivers (including NELSON) of the commercial motor vehicles (including the Freightliner) they used to provide interstate transportation of property to ensure that they (1) were qualified and competent to operate said commercial motor vehicles; (2) knew and followed the Federal Motor Carrier Safety Regulations (FMCSRs) and all applicable federal, state and local law and regulations while operating said commercial motor vehicles; and (3) exercised

reasonable care when driving, operating, controlling, managing and/or maintaining said commercial motor vehicles.

117.    K SPLIT and KAYODE violated the foregoing duties by not exercising reasonable care, including in one, some, or all of the following respects:

a.    Failing to adequately train the drivers (including NELSON) of their owned, leased or contracted commercial motor vehicles (including the Freightliner);

b.    Failing to adequately supervise the drivers (including NELSON) of their owned, leased or contracted commercial motor vehicles (including the Freightliner);

c.    Failing to ensure that the drivers (including NELSON) of their owned, leased or contracted commercial motor vehicles (including the Freightliner) were qualified and competent to operate a commercial motor vehicle under the applicable circumstances;

d.    Failing to ensure that their owned, leased or contracted commercial motor vehicles (including the Freightliner) were being operated in a controlled and reasonable manner;

e.    Failing to inspect driver logs prior to assigning or permitting NELSON to transport the Shipment;

f.    Failing to adhere to, and ensure that their drivers (including NESLON) adhered to, the safety rules, regulations, policies and procedures of all applicable local, municipal, state and federal regulations (including the Federal Motor Carrier Safety Regulations) pertaining to the trucking industry;

g.    Failing to adhere to, and ensure that their drivers (including NESLON) adhered to, the safety rules pertaining to truck drivers in the Commercial Driver's License Manual;

h.    Failing to ensure NELSON completed all required safety training offered by K SPLIT and/or KAYODE;

i.    Carelessly and negligently assigning or permitting NELSON to operate the Freightliner when they knew or should have known that NELSON was unfit to safely operate a commercial motor vehicle.

118.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, NELSON, the agent, servant, employee and/or statutory employee of K SPLIT and/or KAYODE, failed to exercise reasonable care in the operation of the Freightliner while transporting the Shipment, including by committing one, some, or all of the following negligent acts and omissions:

    a.    Failing to keep a proper lookout for other vehicles upon the roadway;

    b.    Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

    c.    Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

    d.    Failing to stop to avoid a collision;

    e.    Failing to sound the horn when approaching the intersection;

    f.    Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11-601;

    g.    Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

    h.    Otherwise being careless and negligent.

119.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary

medical care and treatment in the future. Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life. Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against KSPLIT and KAYODE, individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count V
### Negligence – *Respondeat Superior* (Agency)
### Marcia vs. Falcon and Azam

120.    Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

121.    Prior to June 1, 2021, K SPLIT and/or KAYODE provided NELSON to FALCON and AZAM to operate the Freightliner for FALCON and AZAM.

122.    At all relevant times, FALCON employed NELSON as a commercial truck driver to operate the Freightliner.

123.    Additionally or in the alternative, at all relevant times, AZAM employed NELSON as a commercial truck driver to operate the Freightliner.

124.    At all times relevant hereto, NELSON was operating the Freightliner in furtherance of FALCON's business as a motor carrier.

125.    Additionally or in the alternative, at all times relevant hereto, NELSON was operating the Freightliner in furtherance of AZAM's business as a motor carrier.

126.     At all relevant times, NELSON was operating the Freightliner for the purpose for which he was employed by FALCON.

127.     Additionally or in the alternative, at all relevant times, NELSON was operating the Freightliner for the purpose for which he was employed by AZAM.

128.     At all relevant times, FALCON gave NELSON authority, either express or implied, to use and operate the Freightliner.

129.     Additionally or in the alternative, at all relevant times, AZAM gave NELSON authority, either express or implied, to use and operate the Freightliner.

130.     At all relevant times, FALCON had the right to control the operative details and manner in which NELSON performed his work in operating the Freightliner and transporting the Shipment.

131.     Additionally or in the alternative, at all relevant times, AZAM had the right to control the operative details and manner in which NELSON performed his work in operating the Freightliner and transporting the Shipment.

132.     At all relevant times, NELSON was acting as an agent, servant and/or employee of FALCON while operating the Freightliner.

133.     Additionally or in the alternative, at all relevant times, NELSON was acting as an agent, servant, and/or employee of AZAM while operating the Freightliner.

134.     Because NELSON was operating the Freightliner within the scope and course of his agency or employment with FALCON and in furtherance of FALCON's business interests at the time of the Crash, FALCON is vicariously liable for NELSON's negligence and the damages sustained by Plaintiffs.

135.    Additionally or in the alternative, because NELSON was operating the Freightliner within the scope and course of his agency and/or employment with AZAM and in furtherance of AZAM's business interests at the time of the Crash, AZAM is vicariously liable for NELSON's negligence and the damages sustained by Plaintiffs.

136.    At all relevant times, FALCON and AZAM, including their agent, servant and/or employee NELSON, each owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, ownership and control of the Freightliner.

137.    FALCON and AZAM, acting through their agent, servant and/or employee NELSON, each violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

   a.    Failing to keep a proper lookout for other vehicles upon the roadway;

   b.    Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

   c.    Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

   d.    Failing to stop to avoid a collision;

   e.    Failing to sound the horn when approaching the intersection;

   f.    Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11-601;

   g.    Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

   h.    Otherwise being careless and negligent.

138.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to

her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against FALCON and AZAM, individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

<u>**Count VI**</u>
**Negligence – Statutory Employment**
**Marcia vs. Falcon**

139.    Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

140.    Prior to June 1, 2021, K SPLIT and/or KAYODE provided NELSON to FALCON to operate the Freightliner for FALCON in furtherance of FALCON's motor carrier operation.

141.    At the time of the Crash, FALCON had an arrangement with K SPLIT and/or KAYODE under which K SPLIT and/or KAYODE granted FALCON the use of the

Freightliner for a specified period for use in regulated interstate transportation of property in exchange for compensation.

142.	At the time of the Crash, pursuant to its arrangement with K SPLIT and/or KAYODE, FALCON had control of and responsibility for the Freightliner and Nelson.

143.	FALCON assigned NELSON to drive the Freightliner and transport the Shipment.

144.	At all times relevant hereto, FALCON and NELSON were "employer" and "employee," respectively, as those terms are defined in 4 C.F.R. § 390.5.

145.	At the time of the Crash, FALCON, acting in its capacity as a motor carrier, was using the Freightliner to perform interstate transportation of property pursuant to its agreement with NATIONAL BROKERS.

146.	Because NELSON was FALCON's statutory employee at the time of the Crash, FALCON is vicariously liable for NELSON's negligence committed while operating the Freightliner and the Plaintiffs' resulting damages.

147.	At all relevant times, FALCON, including its statutory employee NELSON, owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, ownership and control of the Freightliner.

148.	FALCON, acting through its statutory employee NELSON, violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

    a.	Failing to keep a proper lookout for other vehicles upon the roadway;

    b.	Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

    c.	Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d. Failing to stop to avoid a collision;

e. Failing to sound the horn when approaching the intersection;

f. Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11-601;

g. Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h. Otherwise being careless and negligent.

149. As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish. In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement. Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future. Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life. Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against FALCON in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**Count VII**
**Negligence – Statutory Employment**
**Marcia vs. Azam**

150.    Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

151.    Prior to June 1, 2021, K SPLIT and/or KAYODE provided NELSON to AZAM to operate the Freightliner for AZAM in furtherance of AZAM's motor carrier operation.

152.    At the time of the Crash, AZAM had an arrangement with K SPLIT and/or KAYODE under which K SPLIT and/or KAYODE granted AZAM the use of the Freightliner for a specified period for use in regulated interstate transportation of property in exchange for compensation.

153.    At the time of the Crash, pursuant to its arrangement with K SPLIT and/or KAYODE, AZAM had control of and responsibility for the Freightliner and Nelson.

154.    AZAM assigned NELSON to drive the Freightliner and transport the Shipment.

155.    At all times relevant hereto, AZAM and NELSON were "employer" and "employee," respectively, as those terms are defined in 49 C.F.R. § 390.5.

156.    At the time of the Crash, AZAM, acting in its capacity as a motor carrier, was using the Freightliner to perform interstate transportation of property.

157.    Because NELSON was AZAM's statutory employee at the time of the Crash, AZAM is vicariously liable for NELSON's negligence committed while operating the Freightliner and the Plaintiffs' resulting damages.

158. At all relevant times, AZAM, including its statutory employee NELSON, owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, ownership and control of the Freightliner.

159. AZAM, acting through its statutory employee NELSON, violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

   a. Failing to keep a proper lookout for other vehicles upon the roadway;

   b. Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

   c. Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

   d.

   e. Failing to stop to avoid a collision;

   f. Failing to sound the horn when approaching the intersection;

   g. Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11-601;

   h. Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

   i. Otherwise being careless and negligent.

160. As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and

necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future. Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life. Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against AZAM in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count VIII
### Institutional Negligence
### Marcia vs. Falcon and Azam

161. Plaintiffs hereby incorporate by reference Paragraphs 37-72, 121-135, 140-146 and 151-157 of this Complaint as if fully set forth herein.

162. FALCON and AZAM were motor carriers that employed agents, servants, employees and statutory employees (including NELSON) to perform the acts necessary to operate their commercial motor vehicle operations, including operating commercial motor vehicles (including the Freightliner) on the public highways.

163. At all relevant times, FALCON and AZAM owed the public, including Plaintiffs, a duty to exercise reasonable care to train and supervise the drivers (including NELSON) of the commercial motor vehicles (including the Freightliner) they used to provide interstate transportation of property to ensure that they (1) were qualified and competent

to operate said commercial motor vehicles; (2) knew and followed the Federal Motor Carrier Safety Regulations (FMCSRs) and all applicable federal, state and local law and regulations while operating said commercial motor vehicles; and (3) exercised reasonable care when driving, operating, controlling, managing and/or maintaining said commercial motor vehicles.

164.     FALCON and AZAM violated the foregoing duties by not exercising reasonable care, including in one, some, or all of the following respects:

  a.  Failing to adequately train the drivers (including NELSON) of their owned, leased or contracted commercial motor vehicles (including the Freightliner);

  b.  Failing to adequately supervise the drivers (including NELSON) of their owned, leased or contracted commercial motor vehicles (including the Freightliner);

  c.  Failing to ensure that the drivers (including NELSON) of their owned, leased or contracted commercial motor vehicles (including the Freightliner) were qualified and competent to operate a commercial motor vehicle under the applicable circumstances;

  d.  Failing to ensure that their owned, leased or contracted commercial motor vehicles (including the Freightliner) were being operated in a controlled and reasonable manner;

  e.  Failing to inspect driver logs prior to assigning or permitting NELSON to transport the Shipment;

  f.  Failing to adhere to, and ensure that their drivers adhered to, the safety rules, regulations, policies and procedures of all applicable local, municipal, state and federal regulations (including the Federal Motor Carrier Safety Regulations) pertaining to the trucking industry;

  g.  Failing to adhere to, and ensure that their drivers (including NESLON) adhered to, the safety rules pertaining to truck drivers in the Commercial Driver's License Manual;

  h.  Failing to ensure NELSON completed all required safety training offered by FALCON, AZAM, K SPLIT and/or KAYODE;

i.      Carelessly and negligently assigning or permitting NELSON to operate the Freightliner when they knew or should have known that NELSON was unfit to safely operate a commercial motor vehicle.

165.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, NELSON, the agent, servant, employee and/or statutory employee of FALCON and/or AZAM, failed to exercise reasonable care in the operation of the Freightliner while transporting the Shipment, including by committing one, some, or all of the following negligent acts and omissions:

a.      Failing to keep a proper lookout for other vehicles upon the roadway;

b.      Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

c.      Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d.      Failing to stop to avoid a collision;

e.      Failing to sound the horn when approaching the intersection;

f.      Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11;

g.      Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.      Otherwise being careless and negligent.

166.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended

great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future. Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life. Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against FALCON and AZAM, individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count IX
### Negligence – *Respondeat Superior* (Agency)
### Marcia vs. Gamer

167.    Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

168.    At all relevant times, GAMER employed NELSON as a commercial truck driver to operate the Freightliner.

169.    At all times relevant hereto, NELSON was operating the Freightliner in furtherance of GAMER's business as a motor carrier.

170.    At all relevant times, NELSON was operating the Freightliner for the purpose for which he was employed by GAMER.

171.    At all relevant times, GAMER gave NELSON authority, either express or implied, to use and operate the Freightliner.

172. At all relevant times, GAMER had the right to control the operative details and manner in which NELSON performed his work in operating the Freightliner and transporting the Shipment.

173. At all relevant times, NELSON was acting as an agent, servant and/or employee of GAMER while operating the Freightliner.

174. Because NELSON was operating the Freightliner within the scope and course of his agency or employment with GAMER and in furtherance of GAMER's business interests at the time of the Crash, GAMER is vicariously liable for NELSON's negligence and the damages sustained by Plaintiffs.

175. At all relevant times, GAMER, including its agent, servant and/or employee NELSON, owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, and control of the Freightliner.

176. GAMER, acting through its agent, servant and/or employee NELSON, violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

    a.  Failing to keep a proper lookout for other vehicles upon the roadway;

    b.  Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

    c.  Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

    d.  Failing to stop to avoid a collision;

    e.  Failing to sound the horn when approaching the intersection;

    f.  Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11;

g.    Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.    Otherwise being careless and negligent.

177.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life. Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

      WHEREFORE, MARCIA demands judgment in her favor and against GAMER in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count X
### Negligence – Statutory Employment
### Marcia vs. Gamer

178.    Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein.

179.     TRANSPLACE's agreement with GAMER prohibited GAMER from subcontracting the Shipment to another carrier or transferring its obligations to any affiliate without Transplace's prior written consent.

180.     On information and belief, TRANSPLACE did not give GAMER prior written consent to broker, subcontract or transfer GAMER's obligation to transport the Shipment to another motor carrier.

181.     TRANSPLACE's agreement with GAMER required that GAMER be identified as the carrier on the Bill of Lading.

182.     GAMER was identified as the carrier on the Bill of Lading for the Shipment.

183.     By accepting and agreeing to transport the Shipment, GAMER legally bound itself to transport the Shipment.

184.     GAMER, through its brokerage arm NATIONAL BROKERS, had an arrangement with FALCON to use Nelson and the Freightliner to transport the Shipment.

185.     NELSON signed the Bill of Lading for the Shipment as GAMER's agent.

186.     At the time of the Crash, GAMER had an arrangement with FALCON, K SPLIT and/or KAYODE under which the latter granted GAMER the use of the Freightliner for a specified period for use in regulated interstate transportation of property in exchange for compensation.

187.     At the time of the Crash, pursuant to its arrangement with FALCON, K SPLIT and/or KAYODE, GAMER had control of and responsibility for the Freightliner and Nelson.

188.     GAMER assigned NELSON to drive the Freightliner and transport the Shipment.

189.    At all times relevant hereto, GAMER and NELSON were "employer" and "employee," as those terms are defined in 49 C.F.R. § 390.5.

190.    Because NELSON was GAMER's statutory employee at the time of the Crash, GAMER is vicariously liable for NELSON's negligence committed while operating the Freightliner and the Plaintiffs' resulting damages.

191.    At all relevant times, GAMER, including its statutory employee NELSON, owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, ownership and control of the Freightliner.

192.    GAMER, acting through its statutory employee NELSON, violated this duty by failing to exercise reasonable care, including by committing one, some, or all of the following negligent acts and omissions:

a.    Failing to keep a proper lookout for other vehicles upon the roadway;

b.    Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

c.    Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d.    Failing to stop to avoid a collision;

e.    Failing to sound the horn when approaching the intersection;

f.    Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11;

g.    Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.    Otherwise being careless and negligent.

193.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against GAMER in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count XI
### Institutional Negligence
### Marcia vs. Gamer

194.    Plaintiffs hereby incorporate by reference Paragraphs 37-72, 168-174 and 179-190 of this Complaint as if fully set forth herein.

195.    GAMER was a motor carrier that employed agents, servants, employees and statutory employees (including NELSON) to perform the acts necessary to operate its commercial motor vehicle operation, including operating commercial motor vehicles (including the Freightliner) on the public highways.

196. At all relevant times, GAMER owed the public, including Plaintiffs, a duty to exercise reasonable care to train and supervise the drivers (including NELSON) of the commercial motor vehicles (including the Freightliner) it used to provide interstate transportation of property to ensure that they (1) were qualified and competent to operate said commercial motor vehicles; (2) knew and followed the Federal Motor Carrier Safety Regulations (FMCSRs) and all applicable federal, state and local laws and regulations while operating said commercial motor vehicles; and (3) exercised reasonable care when driving, operating, controlling, managing and/or maintaining said commercial motor vehicles.

197. GAMER violated the foregoing duties by not exercising reasonable care, including in one, some, or all of the following respects:

a.  Failing to adequately train the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner);

b.  Failing to adequately supervise the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner);

c.  Failing to ensure that the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner) were qualified and competent to operate a commercial motor vehicle under the applicable circumstances;

d.  Failing to ensure that its owned, leased or contracted commercial motor vehicles (including the Freightliner) were being operated in a controlled and reasonable manner;

e.  Failing to inspect driver logs prior to assigning or permitting NELSON to transport the Shipment;

f.  Failing to adhere to, and ensure that its drivers (including NELSON) adhered to, the safety rules, regulations, policies and procedures of all applicable local, municipal, state and federal regulations (including the

Federal Motor Carrier Safety Regulations) pertaining to the trucking industry;

g.    Failing to adhere to, and ensure that its drivers (including NESLON) adhered to, the safety rules pertaining to truck drivers in the Commercial Driver's License Manual;

h.    Failing to ensure NELSON completed all required safety training offered by GAMER, FALCON, AZAM, K SPLIT and/or KAYODE;

i.    Carelessly and negligently assigning or permitting NELSON to operate the Freightliner when it knew or should have known that NELSON was unfit to safely operate a commercial motor vehicle.

198.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, NELSON, the agent, servant, employee and/or statutory employee of GAMER, failed to exercise reasonable care in the operation of the Freightliner while transporting the Shipment, including by committing one, some, or all of the following negligent acts and omissions:

a.    Failing to keep a proper lookout for other vehicles upon the roadway;

b.    Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

c.    Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d.    Failing to stop to avoid a collision;

e.    Failing to sound the horn when approaching the intersection;

f.    Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11;

g.    Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.    Otherwise being careless and negligent.

199.     As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against GAMER in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count XII
### Negligence – *Respondeat Superior* (Agency)
### Marcia vs. Transplace/Uber

200.   Plaintiffs hereby incorporate by reference Paragraphs 37-72, 168-174 and 179-190 of this Complaint as if fully set forth herein.

201.   This Count and the remedy sought herein is a refiling of Plaintiffs' complaint against Transplace and Uber, who were dismissed from this case without prejudice on September 19, 2022.

202.   On May 3, 2019, TRANSPLACE and GAMER entered into a written "Motor Carriage Agreement" (hereinafter "the Transplace-Gamer Agreement").

203.   Pursuant to the Transplace-Gamer Agreement, GAMER was required to transport cargo for TRANSPLACE's customers from point of origin to the point of delivery using competent, licensed personnel operating GAMER's trucks, trailers and other equipment.

204.   The Transplace-Gamer Agreement prohibited GAMER from transferring its obligations to an affiliated company or subcontracting any shipments to other carriers without TRANSPLACE's prior written consent.

205.   TRANSPLACE hired GAMER to transport the Shipment pursuant to the terms and conditions of the Transplace-Gamer Agreement.

206.   The Transplace-Gamer Agreement gave TRANSPLACE a right of control over the operative details of GAMER's work, including:

   a.   requiring GAMER to adhere to pickup and delivery times imposed by TRANSPLACE and its Customers;

   b.   requiring GAMER to strictly comply with all of TRANSPLACE'S Customer's posted rules and with TRANSPLACE's and its customer's procedures regarding care and custody of sealed cargo;

   c.   requiring Gamer to complete all bills of lading in a manner specified by TRANSPLACE in the contract;

   d.   requiring GAMER to "follow all instructions regarding the handling, transportation and storage of a Food Shipment."

   e.   requiring GAMER had to "obtain and follow [TRANSPLACE's] and/or Customer's specific instructions regarding disposal or salvage" of damages or labeled cargo;

   f.   dictating how and when trailer seals could be broken; and

   g.   requiring GAMER to maintain specific types of insurance policies with specific policy limits dictated by TRANSPLACE.

207.    On information and belief, TRANSPLACE, as agent of the shipper of the Shipment, related the shipper's special instructions to GAMER regarding how the Shipment was to be transported.

208.    Because GAMER accepted the Shipment from TRANSPLACE in its capacity as a motor carrier, agreed to transport the Shipment, and transported the Shipment in the Freightliner, which GAMER did not own, pursuant to an arrangement with another, NELSON was GAMER's statutory employee when he was operating the Freightliner, as outlined in Paragraphs 37-64 and 179-190 of this Complaint.

209.    On information and belief, TRANSPLACE had the right to control the operative details and manner in which GAMER and its agents, servants, independent contractors, drivers and statutory employees, including NELSON, performed their work in operating the Freightliner and transporting the Shipment.

210.    At all relevant times, GAMER and NELSON were operating the Freightliner in furtherance of TRANSPLACE's business as a freight broker.

211.    At all relevant times, GAMER and NELSON were operating the Freightliner for the purpose for which they were employed by TRANSPLACE.

212.    At all relevant times, TRANSPLACE gave GAMER and NELSON authority, either express or implied, to use and operate the Freightliner.

213.    At all relevant times, GAMER and NELSON were the agents, servants and/or employees of TRANSPLACE.

214.    Because GAMER and NELSON were the agents, servants and/or employees of TRANSPLACE and were acting within the scope of their agency and/or employment for

TRANSPLACE, TRANSPLACE is vicariously liable for the negligence of GAMER and NELSON and the damages sustained by Plaintiffs.

215.     At all relevant times, TRANSPLACE, acting through its agents, employees, and/or servants GAMER and NELSON, owed a duty to the public, including Plaintiffs, to exercise reasonable care in the maintenance, operation, and control of the Freightliner.

216.     TRANSPLACE, acting through its agents, employees, and/or servants GAMER and NELSON, violated this duty by failing to exercise reasonable care in the operation of the Freightliner, including by committing one, some, or all of the following negligent acts and omissions:

    a.    Failing to keep a proper lookout for other vehicles upon the roadway;

    b.    Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

    c.    Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

    d.    Failing to stop to avoid a collision;

    e.    Failing to sound the horn when approaching the intersection;

    f.    Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11;

    g.    Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash and;

    h.    Otherwise being careless and negligent.

217.     At all relevant times, TRANSPLACE, acting through its agent, servant and/or employee GAMER, owed the public, including Plaintiffs, a duty to exercise reasonable care to train and supervise the drivers of the commercial motor vehicles it used to provide

interstate transportation of property to ensure that they (1) were qualified and competent to operate said commercial motor vehicles; (2) knew and followed the Federal Motor Carrier Safety Regulations (FMCSRs) and all applicable federal, state and local law while operating said commercial motor vehicles; and (3) exercised reasonable care when driving, operating, controlling, managing and/or maintaining said commercial motor vehicles.

218.    TRANSPLACE, acting through its agent, servant and/or employee GAMER, violated the foregoing duties by not exercising reasonable care, including in one, some, or all of the following respects:

      a.      Failing to adequately train the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner);

      b.      Failing to adequately supervise the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner);

      c.      Failing to ensure that the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner) were qualified and competent to operate a commercial motor vehicle under the applicable circumstances;

      d.      Failing to ensure that its owned, leased or contracted commercial motor vehicles (including the Freightliner) were being operated in a controlled and reasonable manner;

      e.      Failing to inspect driver logs prior to retaining the services of FALCON, K SPLIT and NELSON to transport the Shipment;

      f.      Failing to adhere to safety rules, regulations, policies and procedures of all applicable local, municipal, state and federal regulations (including the Federal Motor Carrier Safety Regulations) pertaining to the trucking industry;

      g.      Failing to adhere to, and ensure that its drivers (including NESLON) adhered to, the safety rules pertaining to truck drivers in the Commercial Driver's License Manual;

h.  Failing to ensure NELSON completed all required safety training offered by GAMER, FALCON, K SPLIT, AZAM and/or KAYODE;

i.  Carelessly and negligently assigning or permitting NELSON to operate the Freightliner when GAMER knew or should have known that NELSON was unfit to safely operate a commercial motor vehicle.

219.  As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against TRANSPLACE and UBER, individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## Count XIII
### Negligent Selection (Restatement (Second) of Torts § 411)
### Marcia vs. Transplace/Uber

220.  Plaintiffs hereby incorporate by reference Paragraphs 37-72, 168-174 and 179-190 of this Complaint as if fully set forth herein.

221. This Count and the remedy sought herein is a refiling of Plaintiffs' complaint against Transplace and Uber, who were dismissed from this case without prejudice on September 19, 2022.

### *Transplace had a duty to select a competent and careful motor carrier*

222. TRANSPLACE and GAMER entered into a written "Motor Carriage Agreement" (hereinafter "the Transplace-Gamer Agreement") on May 3, 2019.

223. On or shortly before June 1, 2021, TRANSPLACE hired GAMER to transport the Shipment pursuant to the terms and conditions of the Transplace-Gamer Agreement.

224. TRANSPLACE had a duty to select a motor carrier to transport the Shipment that possessed the knowledge, skill, experience, characteristics and available equipment that a reasonable person would realize a motor carrier must have in order to transport the Shipment over the public highways without creating unreasonable risk of injury to others.

### *Transplace breached its duty by selecting Gamer to transport the Shipment*

225. TRANSPLACE breached its duty of reasonable care in selecting GAMER as a motor carrier because it:

    a. failed to conduct a reasonable investigation into GAMER's competence and fitness, including by failing to exercise reasonable care to investigate GAMER's policies, procedures and practices and its safety record with the Federal Motor Carrier Safety Administration ("FMCSA");

    b. failed to take reasonable measures to prohibit or prevent GAMER from subcontracting to another its obligation to actually perform the transportation GAMER had agreed to perform;

    c. entered into the Transplace-Gamer Agreement when a reasonably prudent person under the same or similar circumstances would have discovered that GAMER was not competent, qualified and fit to provide motor carrier services and therefore would have refused to contract with GAMER;

    d. failed to reasonably monitor GAMER's ongoing policies, procedures and practices and ongoing safety record with the FMCSA between the time it

initially contacted with GAMER and the time it hired GAMER to transport the Shipment; and

e. hired GAMER to transport the Shipment when a reasonably prudent person under the same or similar circumstances would have discovered that GAMER was not competent, qualified and fit to do so and therefore would have refused to hire GAMER.

226. Before hiring GAMER to transport any shipments, a reasonably prudent person under the same or similar circumstances as TRANSPLACE would have investigated GAMER's safety performance, including its BASIC measures and percentile scores, safety ratings, and inspection history, by:

a. utilizing the information about GAMER that was publicly available on the FMCSA's website;

b. requiring GAMER to disclose its BASIC percentiles, any intervention alerts relating to its BASICs, and other non-public information made available to GAMER by the FMCSA;

c. retaining a private service to estimate GAMER's BASIC percentiles; and

d. requiring GAMER to disclose its policies, procedures and practices for hiring, retaining, training and supervising its drivers and other employees (including its statutory employees).

227. At the time TRANSPLACE and GAMER entered into the Transplace-Gamer Agreement on May 3, 2019, TRANSPLACE knew or, in the exercise of reasonable care should have known, of GAMER's BASIC measures and BASIC percentile scores.

228. On April 26, 2019, GAMER's BASIC percentile scores included the following, which were above the FMCSA's intervention threshold and in Alert status:

a. Hours-of-Service (HOS) Compliance: 78th percentile
b. Driver Fitness: 89th percentile
c. Crash Indicator: 86th percentile

229. On information and belief, at the time TRANSPLACE entered into the Transplace-Gamer Agreement, the FMCSA's public website revealed that between

January 1, 2018 and May 1, 2019, GAMER was involved in fifteen crashes in which there was an injury or death or one of the vehicles had to be towed away.

230.    Prior to the time TRANSPLACE and GAMER entered into the Transplace-Gamer Agreement, TRANSPLACE knew or, in the exercise of reasonable care should have known, that GAMER did not possess the knowledge, skill, experience, characteristics, and available equipment which a reasonable person in TRANSPLACE's circumstances would realize a motor carrier must have in order to transport property over the public highways without creating unreasonable risk of injury to others.

231.    After initially contracting with GAMER, a reasonably prudent person under the same or similar circumstances as TRANSPLACE would have continued to monitor GAMER's safety performance by:

      a.      monitoring the safety data available on the FMCSA website on a monthly basis;

      b.      requiring GAMER to continue to disclose its BASIC percentile scores, any intervention alerts relating to its BASICs, and other non-public FMCSA safety information available to GAMER on a monthly basis;

      c.      engaging a private service to estimate GAMER's BASIC percentiles on a monthly basis; and/or

      d.      periodically investigating whether GAMER was complying with its policies, procedures and practices for hiring, retaining, training and supervising its drivers and other employees (including its statutory employees).

232.    A reasonably prudent person under the same or similar circumstances as TRANSPLACE would have carefully considered all the information revealed in the foregoing investigations before hiring GAMER to transport the Shipment.

233.    GAMER'S HOS and/or Driver Fitness BASIC percentiles were above the intervention threshold and in Alert Status every month from April 2019 until the time

TRANSPLACE hired GAMER to transport the Shipment shortly before June 1, 2021.

234.    On information and belief, at the time TRANSPLACE hired GAMER to transport the Shipment, the FMCSA's public website revealed that between January 1, 2020 until June 1, 2021, GAMER was involved in eight crashes in which there was an injury or death or one of the vehicles had to be towed away.

235.    Prior to the time TRANSPLACE hired GAMER to transport the Shipment, TRANSPLACE knew or, in the exercise of reasonable care should have known, that GAMER did not possess the knowledge, skill, experience, characteristics, and available equipment a reasonable person in TRANSPLACE's circumstances would realize a motor carrier must have in order to transport the Shipment over the public highways without creating unreasonable risk of injury to others.

### *Transplace's negligent selection of Gamer was a proximate cause of the Crash and Plaintiffs' injuries*

236.    At all relevant times, GAMER, as a motor carrier responsible for the transportation of the Shipment, owed the public, including Plaintiffs, a duty to exercise reasonable care to train and supervise the drivers (including NELSON) of the commercial motor vehicles (including the Freightliner) it used to provide interstate transportation of property to ensure that they (1) were qualified and competent to operate said commercial motor vehicles; (2) knew and followed the Federal Motor Carrier Safety Regulations and all applicable federal, state and local law while operating said commercial motor vehicles; and (3) exercised reasonable care when driving, operating, controlling, managing and/or maintaining said commercial motor vehicles.

237.    GAMER foreseeably violated the foregoing duties by not exercising reasonable care, including in one, some, or all of the following respects:

a. Failing to adequately train the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner);

b. Failing to adequately supervise the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner);

c. Failing to ensure that the drivers (including NELSON) of its owned, leased or contracted commercial motor vehicles (including the Freightliner) were qualified and competent to operate a commercial motor vehicle under the applicable circumstances;

d. Failing to ensure that its owned, leased or contracted commercial motor vehicles (including the Freightliner) were being operated in a reasonable and controlled manner;

e. Failing to inspect driver logs prior to assigning or permitting NELSON to transport the Shipment;

f. Failing to adhere to, and ensure that its drivers (including NELSON) adhered to, the safety rules, regulations, policies and procedures of all applicable local, municipal, state and federal regulations (including the Federal Motor Carrier Safety Regulations) pertaining to the trucking industry;

g. Failing to adhere to, and ensure that its drivers (including NESLON) adhered to, the safety rules pertaining to truck drivers in the Commercial Driver's License Manual;

h. Failing to ensure NELSON completed all required safety training offered by GAMER, FALCON, AZAM, K SPLIT and/or KAYODE;

i. Carelessly and negligently assigning or permitting NELSON to operate the Freightliner when it knew or should have known that NELSON was unfit to safely operate a commercial motor vehicle.

238. As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions of GAMER, NELSON, the agent, servant, employee and/or statutory employee of GAMER, failed to exercise reasonable care in the operation of the Freightliner while transporting the Shipment, including by committing one, some, or all of the following negligent acts and omissions:

a.     Failing to keep a proper lookout for other vehicles upon the roadway;

b.     Failing to stop at a properly posted stop sign for southbound traffic on Lowell Park Road, in violation of 625 ILCS 5/11-305;

c.     Failing to yield to cross traffic on Pines Road before entering the intersection, in violation of 625 ILCS 5/11-904;

d.     Failing to stop to avoid a collision;

e.     Failing to sound the horn when approaching the intersection;

f.     Proceeding at a speed that was greater than reasonable and proper with regard to traffic conditions and the use of the road, or which endangered the safety of persons or property in violation of 625 ILCS 5/11;

g.     Failing to comply with federal regulations (including the Federal Motor Carrier Safety Regulations), including those requiring that electronic driver logs or a paper log book be kept concerning the driver's activity before and at the time of the Crash; and

h.     Otherwise being careless and negligent.

239.    As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish. In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement. Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future. Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life. Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

240.     Because TRANSPLACE's negligence, as described above in this Count, resulted in TRANSPLACE's hiring the incompetent and unfit GAMER to transport the Shipment, the negligence of GAMER and NELSON and the resulting Crash and injuries to MARCIA were proximately caused by TRANSPLACE's negligence in selecting GAMER to transport the Shipment.

        WHEREFORE, MARCIA demands judgment in her favor and against TRANSPLACE and UBER, individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count XIV
### Joint Enterprise
### Marcia vs. Transplace, Uber, Gamer, National Brokers, Falcon, K Split, Azam, Kayode and Nelson

241.     Plaintiffs hereby incorporate by reference Paragraphs 37-72, 78-91, 96-109, 121-135, 140-146, 151-157, 168-174, 179-190, 202-214 of this Complaint as if fully set forth herein.

242.     With respect to TRANSPLACE and UBER, this Count and the remedy sought herein is a refiling of Plaintiffs' complaint against TRANSPLACE and UBER, who were dismissed from this case without prejudice on September 19, 2022.

### *The Trucking Joint Enterprise*

243.     The Shipment was a recurring shipment of Cummins' products between Elgin, Illinois and El Paso, Texas (hereafter in this Count referred to as the "Elgin-to-El Paso Lane").

244.     TRANSPLACE, GAMER, NATIONAL BROKERS, FALCON, K SPLIT, AZAM, KAYODE and NELSON (hereafter in this Count collectively referred to as "the

Joint Enterprisers") entered into an agreement to ensure that the Elgin-to-El Paso Lane was always covered, i.e., that each shipment would be timely transported (hereinafter "the Trucking Joint Enterprise").

245.    NELSON operated the Freightliner on the day of the Crash in furtherance of the Trucking Joint Enterprise.

246.    The Joint Enterprisers had an express or implied agreement to work together, and did work together, to perform a common purpose of carrying out the Trucking Joint Enterprise and transporting the Shipment.

247.    The Joint Enterprisers had a community of pecuniary interest in their common purpose of operating the Trucking Joint Enterprise and transporting the Shipment.

248.    The Joint Enterprisers had mutual rights of control in the direction of the Trucking Joint Enterprise and the transportation of the Shipment.

249.    That is, each Joint Enterpriser had some right to direct and govern the movements and conduct of the other Joint Enterprisers in connection with their common purpose of operating the Trucking Joint Enterprise and transporting the Shipment.

250.    The Joint Enterprisers shared in the profits of the Trucking Joint Enterprise and the transportation of the Shipment.

### *Transplace's Right of Control over the Joint Enterprise*

251.    As part of the Trucking Joint Enterprise, TRANSPLACE and GAMER entered into the May 3, 2019 "Motor Carriage Agreement" (referred to above and hereinafter as "the Transplace-Gamer Agreement").

252.  Pursuant to the Transplace-Gamer Agreement, GAMER agreed with TRANSPLACE to transport shipments in the Elgin-to-El Paso Lane (including the Shipment) as a motor carrier.

253.  TRANSPLACE had the right to control GAMER's work performed in furtherance of the Trucking Joint Enterprise as outlined in Paragraphs 202-214 of this Complaint.

### *Gamer's and National Brokers' Right of Control over the Joint Enterprise*

254.  If GAMER could not transport a shipment in the Elgin-to-El Paso Lane in a commercial motor vehicle it owned using a driver it regularly employed, it would subcontract with another motor carrier to transport the shipment.

255.  Sometimes, GAMER would hire NATIONAL BROKERS to locate a motor carrier to transport a shipment.

256.  As part of the Trucking Joint Enterprise, GAMER and NATIONAL BROKERS were parties to a September 21, 2018 "Broker-Shipper (Customer) Agreement" (hereinafter "the Gamer-National Brokers Agreement").

257.  Pursuant to the Gamer-National Brokers Agreement, NATIONAL BROKERS agreed to arrange for the interstate and/or intrastate transportation of property as a broker for GAMER.

258.  The Gamer-National Brokers Agreement gave GAMER a right to control NATIONAL BROKERS' work performed in furtherance of the Trucking Joint Enterprise, including:

    a.     requiring NATIONAL BROKERS and any motor carriers it hired to comply with GAMER's safety rules and regulations;

    b.     requiring NATIONAL BROKERS to follow GAMER's instructions regarding the manner of disposal of any damaged shipment;

c.  requiring all motor carriers NATIONAL BROKERS hired to maintain specific types of insurance with specific policy limits dictated by GAMER;

d.  giving GAMER the right to audit NATIONAL BROKERS' operations; and

e.  requiring NATIONAL BROKERS and the motor carriers it hired to execute written contracts with specified terms, including that the motor carrier must strictly comply with GAMER's schedules for pick up, transportation and delivery.

259.  At the time of the Crash, GAMER was NELSON's master, as outlined in Paragraphs 168-174 of this Complaint, and therefore had a right to control NELSON'S work performed in furtherance of the Trucking Joint Enterprise.

260.  At the time of the Crash, GAMER was NELSON's statutory employer, as outlined in Paragraphs 179-190 of this Complaint, and therefore had a right to control NELSON'S work and the operation of the Freightliner in furtherance of the Trucking Joint Enterprise.

***Falcon's and Azam's Right of Control over the Joint Enterprise***

261.  FALCON and AZAM were motor carriers that GAMER and NATIONAL BROKERS hired to transport one or more shipments in the Elgin-to-El Paso Lane.

262.  If FALCON or AZAM could not transport a shipment in a commercial motor vehicle it owned using a driver it regularly employed, it would subcontract with another motor carrier to transport the shipment in a commercial motor vehicle leased to FALCON or AZAM.

263.  K SPLIT and KAYODE were motor carriers that FALCON and AZAM hired to transport such shipments.

264. K SPLIT and KAYODE leased one or more commercial motor vehicles (including the Freightliner) to FALCON and AZAM.

265. FALCON and AZAM used the commercial motor vehicle(s) they leased from K SPLIT and KAYODE (including the Freightliner) to transport shipments in the Elgin-to-El Paso Lane.

266. K SPLIT and KAYODE leased the Freightliner to FALCON and AZAM pursuant to two separate written Lease Agreements dated May 19, 2021 (hereinafter "the Freightliner Lease Agreements").

267. K SPLIT and KAYODE provided one or more drivers to operate the commercial motor vehicle(s) that they leased to FALCON and AZAM pursuant to two separate written agreements dated May 19, 2021 (hereinafter the "Carrier Agreements").

268. The Carrier Agreements gave FALCON and AZAM a right to control the work that K SPLIT and KAYODE performed in furtherance of the Trucking Joint Enterprise, including:

    a.    requiring the driver to present himself as FALCON and AZAM;

    b.    requiring shipments to be transported by a team of drivers who could average 50 miles per hour;

    c.    requiring that shipping paperwork like the bill of lading be maintained in a manner detailed in the contract;

    d.    requiring prior authorization from FALCON and AZAM for early pickup and delivery;

    e.    requiring the driver to provide FALCON and AZAM status updates "at time of arrival, load, and unload, in addition to every 2-4 hours, depending on customer request," and if there were an excessive delay, upon pain of a financial penalty;

    f.    prohibiting "re-brokering" of shipments without express written consent of FALCON and AZAM.

269. NELSON was one of the drivers K SPLIT and KAYODE provided to FALCON and AZAM to drive trucks in furtherance of the Trucking Joint Enterprise.

270. At the time of the Crash, FALCON and/or AZAM was NELSON's master, as outlined in Paragraphs 121-135 of this Complaint, so FALCON and/or AZAM had a right to control NELSON'S work performed in furtherance of the Trucking Joint Enterprise.

271. At the time of the Crash, FALCON and/or AZAM were NELSON's statutory employers, as outlined in Paragraphs 140-146, 151-157 of this Complaint, so FALCON and/or AZAM had a right to control NELSON'S operation of the Freightliner.

### *K Split's, Kayode's and Nelson's Right of Control over the Joint Enterprise*

272. At the time of the Crash, K SPLIT and/or KAYODE was NELSON's master, as outlined in Paragraphs 78-91 of this Complaint, so K SPLIT and/or KAYODE had a right to control NELSON'S work.

273. At the time of the Crash, K SPLIT and/or KAYODE was NELSON's statutory employer, as outlined in Paragraphs 96-109 of this Complaint, so K SPLIT and/or KAYODE had a right to control NELSON'S operation of the Freightliner.

### *The Negligence Committed in Furtherance of the Joint Enterprise*

274. The Joint Enterprisers had a duty to exercise reasonable care in the performance of the work undertaken by each of them on behalf of the Trucking Joint Enterprise, including the transportation of the Shipment, to safely transport said cargo in interstate commerce pursuant to all applicable rules, regulations, prohibitions and requirements of state, local and federal law (including the Federal Motor Carrier Safety Regulations).

275.     At all relevant times, the Joint Enterprisers owed a duty to the public, including

Plaintiffs, to exercise reasonable care in the maintenance, operation, ownership and

control of the Freightliner.

276.     The Joint Enterprisers, acting through NELSON, violated these duties by failing

to exercise reasonable care in the operation of the Freightliner while transporting the

Shipment, including by committing one, some, or all of the following negligent acts and

omissions:

    a.     Failing to keep a proper lookout for other vehicles upon the roadway;

    b.     Failing to stop at a properly posted stop sign for southbound traffic on
           Lowell Park Road, in violation of 625 ILCS 5/11-305;

    c.     Failing to yield to cross traffic on Pines Road before entering the
           intersection, in violation of 625 ILCS 5/11-904;

    d.     Failing to stop to avoid a collision;

    e.     Failing to sound the horn when approaching the intersection;

    f.     Proceeding at a speed that was greater than reasonable and proper with
           regard to traffic conditions and the use of the road, or which endangered
           the safety of persons or property in violation of 625 ILCS 5/11;

    g.     Failing to comply with federal regulations (including the Federal Motor
           Carrier Safety Regulations), including those requiring that electronic
           driver logs or a paper log book be kept concerning the driver's activity
           before and at the time of the Crash and;

    h.     Otherwise being careless and negligent.

277.     At all relevant times, the Joint Enterprisers owed the public, including Plaintiffs, a

duty to exercise reasonable care to train and supervise the drivers (including NELSON)

of the commercial motor vehicles (including the Freightliner) they used to provide

interstate transportation of property in furtherance of the Trucking Joint Enterprise to

ensure that they (1) were qualified and competent to operate said commercial motor

vehicles; (2) knew and followed the Federal Motor Carrier Safety Regulations (FMCSRs) and all applicable federal, state and local law while operating said commercial motor vehicles; and (3) exercised reasonable care when driving, operating, controlling, managing and/or maintaining said commercial motor vehicles.

278.    The Joint Enterprisers, individually and as agents of one another and the Trucking Joint Enterprise, violated the foregoing duties by failing to exercise reasonable care, including by committing one, some or all of the following negligent acts or omissions:

a.    Failing to adequately train the drivers (including NELSON) of the commercial motor vehicles used in the furtherance of the Trucking Joint Enterprise (including the Freightliner);

b.    Failing to adequately supervise the drivers (including NELSON) of the commercial motor vehicles used in the furtherance of the Trucking Joint Enterprise (including the Freightliner);

c.    Failing to ensure that the drivers (including NELSON) of the commercial motor vehicles used in the furtherance of the Trucking Joint Enterprise (including the Freightliner) were qualified and competent to operate a commercial motor vehicle under the applicable circumstances;

d.    Failing to ensure that the commercial motor vehicles used in the furtherance of the Trucking Joint Enterprise (including the Freightliner) were being operated in a controlled and reasonable manner;

e.    Failing to inspect driver logs prior to assigning or permitting drivers (including NELSON) to operate commercial motor vehicles (including the Freightliner) in furtherance of the trucking Joint Enterprise (including by transporting the Shipment);

f.    Failing to adhere to safety rules, regulations, policies and procedures of all applicable local, municipal, state and federal regulations (including the Federal Motor Carrier Safety Regulations) pertaining to the trucking industry;

g.    Failing to adhere to, and ensure that their drivers (including NESLON) adhered to, the safety rules pertaining to truck drivers in the Commercial Driver's License Manual;

h.  Failing to ensure NELSON completed all required safety training offered by GAMER, FALCON, K SPLIT, AZAM and/or KAYODE;

i.  Carelessly and negligently assigning or permitting NELSON to operate the Freightliner when the Joint Enterprisers knew or should have known that NELSON was unfit to safely operate a commercial motor vehicle.

279.  As a direct and proximate result of one, some, or all of the foregoing careless and negligent acts or omissions, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

WHEREFORE, MARCIA demands judgment in her favor and against K SPLIT, KAYODE, GAMER, FALCON, AZAM, TRANSPLACE, UBER, NATIONAL BROKERS, and NELSON, individually and as joint enterprisers, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

### Count XV
**Loss of Consortium**
**Corey Dewey vs. Transplace, Uber, Gamer, National Brokers, Falcon, K Split, Azam, Kayode and Nelson**

280.    Plaintiffs hereby incorporate by reference Paragraphs 37-72 of this Complaint as if fully set forth herein

281.    With respect to TRANSPLACE and UBER, this Count and the remedy sought herein is a refiling of Plaintiffs' complaint against TRANSPLACE and UBER, who were dismissed from this case without prejudice on September 19, 2022.

282.    COREY was married to MARCIA in Pine Creek Township on May 11, 2013 and was at all times since her lawfully wedded husband.

283.    As set forth in the "General Allegations Applicable to All Counts" and Counts I through XIII, above, the negligence of all the Defendants, individually and as members of the Trucking Joint Enterprise, proximately caused the Crash.

284.    As a direct and proximate result of one, some, or all of the careless and negligent acts or omissions of the Defendants, individually and as members of the Trucking Joint Enterprise, and the resulting Crash, MARCIA suffered severe, painful, and permanent injuries to her body, physical impairment, disfigurement and mental and emotional distress and anguish.  In the future, MARCIA will continue to suffer from said pain, mental anguish, physical impairment, and disfigurement.  Further, MARCIA has incurred and expended great sums of money for reasonable and necessary medical care and treatment, and in all probability will incur and expend additional sums of money for reasonable and necessary medical care and treatment in the future.  Further, MARCIA has been deprived of an opportunity to enjoy and attend to the normal affairs of her daily life, including her gainful occupation, and has further been deprived of the normal enjoyment of life.  Further, MARCIA has sustained, and in the future will continue to sustain, diminished earning capacity as a result of the injuries she sustained in the Crash.

285.     As a direct and proximate result of the injuries to MARCIA resulting from the careless and negligent acts of these Defendants and the resulting Crash, COREY sustained a loss of consortium, including but not limited to the loss of companionship, affection, society and other related benefits of marriage.

WHEREFORE, COREY demands judgment in his favor and against KSPLIT, KAYODE, NELSON, GAMER, FALCON, AZAM, TRANSPLACE, UBER, NATIONAL BROKERS, and NELSON individually and as to each of them, in a sum in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

Respectfully submitted by:

THE LAW OFFICE OF ALAN C. SANGIACOMO          s/Alan C. Sangiacomo
Attorney for Plaintiffs                                              Alan C. Sangiacomo
218 N. Jefferson St., Suite 303
Chicago, Illinois 60601
T: (312) 759-0005
E: alan@asangiacomolaw.com
    service@asangiacomolaw.com


WHITING LAW GROUP, LTD.                              /s/ Timothy Whiting
Attorney for Plaintiffs                                              Timothy Whiting
Timothy Whiting
Allison Hostetler
901. W. Jackson Blvd., Suite 400
Chicago, IL 60607
T: (312) 372-1655
E: eservice@whitinglawgroup.com