UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCIA DEWEY and COREY DEWEY,<br><br>Plaintiffs,<br><br>v.<br><br>K SPLIT LOGISTICS LLC; AKINTADE O KAYODE; JAUNOT L. NELSON; FAT AND BROKE, INC. d/b/a Gamer Logistics; FLASH TRUCK LINES CORPORATION d/b/a National Brokers; and FALCON MOVE, LLC,<br><br>Defendants. | No. 21 C 3505<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

Marcia Dewey was injured when the car she was driving was hit by a truck driven by Jaunot Nelson.[1] Dewey and her husband sued Nelson and various entities associated with the truck's ownership and operation in this action.[2] Two of those entities—(1) Fat and Broke, Inc. (doing business as Gamer Logistics ("Gamer) and (2) Falcon Move LLC ("Falcon")—have moved for summary judgment. Plaintiffs brought several claims implicating Gamer and Falcon but conceded all but one in response to their motions. The remaining claim alleges that Gamer and Falcon are each liable for negligent acts associated with Nelson's driving and the truck's operation pursuant to certain federal statutes and regulations regarding the interstate trucking industry. Plaintiffs filed cross motions for summary judgment on this issue against both Gamer

---

[1] Marcia's son was a passenger in the car, and he was also injured.
[2] Marcia's husband has filed a separate action on behalf of their son.

and Falcon. For the following reasons, Gamer's motion is granted; Plaintiffs' cross motion regarding Gamer is denied; Falcon's motion is denied; and Plaintiffs cross motion regarding Falcon is granted.

**Background**

Nelson was employed by Defendant K Split Logistics LLC, and K Split controlled the truck Nelson was driving. The truck was loaded with cargo owned by a company called Transplace Texas, LP. Transplace's cargo came to be in the truck driven by Nelson and controlled by K Split through the following series of transactions:

- Transplace contracted with Gamer to transport cargo from Illinois to Texas.

- Gamer transferred the cargo to National Brokers ("National").

- National posted the cargo to its site and Falcon accepted the load for delivery.

- Falcon dispatched the cargo to K Split.

- K Split agreed to transport the cargo with a truck personally owned by Defendant Kayode Akintade that was driven by Nelson, operated under the federal motor carrier authority possessed by K Split.

The agreement between Falcon and K Split was memorialized in two documents. One was the "Falcon Move LLC Carrier Agreement" under which K Split agreed to provide Falcon with a driver for the truck. *See* R. 233-18 at 2-4. And the other was a written lease (the "Lease") pursuant to which K Split and Akintade leased the truck to Falcon. *See id.* at 5-6. The Lease identified Falcon as the "motor carrier/registrant" and K Split as the "equipment owner," and stated, "Carrier verifies

2

that the Equipment is being operated by the Carrier, pursuant to the terms of the Agreement." *Id.* at 5 (§ III). Falcon's representative under Federal Rule of Civil Procedure 30(b)(6) testified at her deposition that, pursuant to the Lease, K Split was "leasing [the truck] to Falcon to use" in Falcon's capacity as a "motor carrier." *See* R. 233-10 at 27 (100:4-5, 6-17). Falcon's representative also testified that Falcon acted under its "authority as a motor carrier" when it "dispatched" the cargo at issue in this case to K Split. *Id.* at 41 (153:10–154:6).

## Analysis

Prior to amendments to the Interstate Commerce Commission Act, "motor carriers" who signed contracts to transport goods often evaded liability for negligence involving the driver or the truck by leasing the truck, as opposed to owning it, and by contracting with the driver, as opposed to hiring the driver as an employee. *See Roberson v. Indus. Comm'n*, 866 N.E.2d 191, 200-01 (Ill. 2007); *Am. Trucking Ass'n v. United States*, 344 U.S. 298, 304-05 (1953). This often left plaintiffs without meaningful recourse for tort claims. Federal law cured this problem by regulating "motor carriers" when they "use motor vehicles" they do not own "to transport property under an arrangement with another party." 49 U.S.C. § 14102. Regulations issued pursuant to this statute provide that a "motor carrier" that "leases a commercial motor vehicle" is considered an "employer" of the driver of the "motor vehicle." 49 C.F.R. § 390.5. Courts have explained that these statutes and regulations are intended to ensure that motor carriers can be held liable for negligence related to the trucks they use and the drivers of those trucks, "even when an employment

3

relationship does not technically exist," thereby creating what is known as "statutory employer liability." *See Johnke v. Espinal-Quiroz*, 2016 WL 454333, at *7 (N.D. Ill. Feb. 5, 2016); *Dolter v. Keene's Transfer, Inc.*, 2008 WL 3010062, at *3 (S.D. Ill. Aug. 5, 2008).

I.  **Gamer**

Plaintiffs argue that "Gamer was a motor carrier that provided interstate transportation using a truck it did not own." R. 246 at 1. Of course, Gamer is the first motor carrier entity that agreed to transport the cargo that eventually ended up in the truck involved in the accident. But Plaintiffs concede that Gamer did not own or lease that truck. *See* R. 245 at 12 (¶ 18). Absent a lease or ownership, Plaintiffs do not, and cannot, explain how Gamer "used" the truck that was involved in the accident. And if Gamer did not "use" the truck, then Gamer cannot be a "statutory employer" under federal law. *See Puga v. About Tyme Transp., Inc.*, 227 F. Supp. 3d 760, 764 (S.D. Tex. 2017) ("It is the fact of 'use' that triggers the vicarious liability imposed by the Motor Carrier Act.").

Plaintiffs contend that a lease or ownership relationship to the truck—i.e., some kind of privity with the driver—is not necessary to establish a statutory employment liability. Plaintiffs argue that "when a motor carrier that has agreed to transport a shipment hires another motor carrier to do so, the first motor carrier is using the second motor carrier's truck and driver to transport the shipment it obligated itself to transport." R. 246 at 6. "As such," Plaintiffs' argument continues,

"the first motor carrier remains responsible for the operation of the truck and vicariously liable for the driver's negligence." *Id.*

This is true as far as it goes. But here the owners of the truck are K Split and Kayode Akintade, and Falcon leased the truck. Gamer did not "hire" or contract with K Split, Kayode Akintade, or Falcon. Indeed, it is undisputed that K Split and Falcon had no knowledge of Gamer prior to this case. *See* R. 245 at 12-13 (¶¶ 21, 24). So, Plaintiffs' argument that Gamer "hired another motor carrier" to transport a shipment, and "used the second motor carrier's truck and driver to transport the shipment it obligated itself to transport," does not match the facts of this case. And Plaintiffs have cited no authority imposing liability on a motor carrier as far up the transactional chain as Gamer is here.

Therefore, the Court finds that Gamer is not Nelson's "statutory employer" under 49 U.S.C. § 14102 and 49 C.F.R. § 390.5, and summary judgment is granted to Gamer on this issue.

**II.     Falcon**

By contrast, Falcon leased the truck from K Split and Kayode Akintrade. The lease identifies Falson as the "carrier." *See* R. 233-18 at 5 (§ I).

Falcon also signed a "carrier agreement" for K Split to provide a driver for the truck. Although the "carrier agreement" identified K Split as "the carrier," the agreement also requires the truck driver to "present himself as Falcon . . . unless otherwise specified." *Id.* at 3 (§ 15). The agreement also obligates K Split "to put [a Falcon logo] on the side of [the truck] whenever [K Split] carries [Falcon's] freight."

5

*Id.* (§ 16). These contracts demonstrate that Falcon "used" the truck driven by Nelson and that Falcon was Nelson's "employer" under 49 C.F.R. § 390.5. No reasonable juror could disagree.

Falcon disagrees but does not meaningfully address the relevant statutes and regulations. Instead, Falcon's two primary arguments are that: (1) K Split is Nelson's statutory employer and there cannot be more than one statutory employer; and (2) the federal law imposing "statutory employer" liability cannot be applied without regard to whether Falcon "controlled" the truck and Nelson. Falcon has cited no authority supporting either of these arguments. Falcon makes the first argument by attempting to distinguish the case law cited by Plaintiffs which holds that it *is* possible for there to be more than one statutory employer. *See* R. 250 at 3-6. But Falcon cites no authority to the contrary.

Falcon repeatedly insists that Plaintiffs have misrepresented case law in arguing that Falcon satisfies the definition of a statutory employer without some showing that Falcon controlled the truck or Nelson. But in nine pages of briefing on this issue, *see* R. 250 at 7-15, Falcon does not ever address the relevant statutes and regulations under which Falcon is defined as Nelson's employer with potential liability for the truck's use. The Court has explained why Falcon meets that definition, and Falcon has not offered any contrary analysis. Therefore, the Court

6

finds that Falcon is Nelson's "statutory employer" under 49 U.S.C. § 14102 and 49 C.F.R. § 390.5, and summary judgment is granted to Plaintiffs on this issue.

## Conclusion

For these reasons, Gamer's motion for summary judgment [234] is granted. Falcon's motion for summary judgment [233] is denied. Plaintiffs' motion for summary judgment [242] is denied in part and granted in part. A joint status report is due 4/16/2025 regarding how the case should proceed.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 31, 2025